IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANESSA BOINTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. CIV-23-1002-F |
| | ) |
| STATE OF OKLAHOMA ex rel. OKLAHOMA STATE DEPARTMENT OF EDUCATION and RYAN WALTERS, in his official capacity as Superintendent of Public Instruction, and in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendant Ryan Walters (Walters), in his individual capacity, has moved, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint[1] of plaintiff Janessa Bointy (Bointy). Doc. no. 8. Bointy has responded in opposition to the motion, and Walters has replied. Doc. nos. 10 and 11. Upon due consideration of the parties' submissions, the court makes its determination.[2]

---

[1] This action was originally commenced in the District Court of Oklahoma County, State of Oklahoma. Walters removed the action to this court, pursuant to 28 U.S.C. §§ 1441 and 1446, based upon the existence of federal question jurisdiction under 28 U.S.C. § 1331. Although the pleading filed in state court was a petition, the court utilizes the term complaint consistent with the nomenclature of the Federal Rules of Civil Procedure.

[2] Prior to removal, defendants State of Oklahoma ex rel. Oklahoma State Department of Education and Ryan Walters, in his official capacity as Superintendent of Public Instruction, sought dismissal of dismiss Bointy's complaint against them. The motion was denied by the state court.

I.

Bointy was employed by the Oklahoma State Department of Education (OSDE) from December 2020 until March 9, 2023.  Bointy alleges that she was wrongfully terminated from her position as School Counselor Specialist for Project AWARE East in retaliation for statements she made during a meeting of the Board of Education of the Edmond Public Schools on March 6, 2023.  Portions of Bointy's speech had been aired in local media coverage of the school board meeting.  According to Bointy, her speech at the school board meeting was protected by the First Amendment to the United States Constitution and Article II, Section 22 of the Oklahoma Constitution.  Bointy seeks monetary relief against Walters pursuant to 42 U.S.C. § 1983 and Oklahoma's Burk[3] tort doctrine.

In his motion, Walters asserts the affirmative defense of qualified immunity with respect to Bointy's First Amendment retaliation claim under § 1983.  He claims Bointy has failed to state a plausible claim.  Specifically, Walters asserts that Bointy's speech was not protected by the First Amendment because it was made pursuant to her official role as an OSDE employee, rather than in her personal capacity as a citizen.

With respect to Bointy's Burk tort claim, Walters contends the claim is subject to dismissal because Bointy fails to allege in the complaint she was an at-will employee.

II.

Generally, a district court may not consider any material beyond the pleadings in adjudicating a Rule 12(b)(6) motion.  If "matters outside the pleadings are presented to and not excluded by the court," see, Rule 12(d), Fed. R. Civ. P., the court must treat the motion as one for summary judgment under Rule 56, Fed. R.

---

[3] Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989).

2

Civ. P. A court may, however, consider "matters of which a court may take judicial notice" without converting the Rule 12(b)(6) motion into a Rule 56 motion. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

Walters requests the court, pursuant to Rule 201, Fed. R. Evid., to take judicial notice of the comments made by Bointy during the school board meeting which were accessible on YouTube. *See,* https://www.youtube.com/watch?v=SGQbhccvNNE. Bointy does not object to Walters' request. Doc. no. 10, p. 5 n. 1 ("For purposes of this brief, Plaintiff does not contend the court is unable to take notice of the speech itself[.]").

A court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Upon review, the court will take judicial notice of the contents of the comments, not the truth of those comments. *See*, <u>High Desert Relief, Inc. v. United States</u>, 917 F.3d 1170, 1175 n. 1 (10th Cir. 2019) ("Though the parties did not include a copy of this publication on appeal, we may nevertheless take judicial notice of official government publications."); <u>Tal v. Hogan</u>, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) ("[T]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.") (quotations marks and citation omitted).

### III.

"Under 42 U.S.C. § 1983, a person acting under color of state law who subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . . Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages action unless their conduct was unreasonable in light of

clearly established law." Knopf v. Williams, 884 F.3d 939, 943 (10th Cir. 2018) (internal quotation marks and citation omitted).

"A § 1983 defendant's assertion of qualified immunity . . . creates a presumption that the defendant is immune from suit." Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021) (internal quotation marks, citation and brackets omitted). "To overcome this presumption, the plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." Id. The plaintiff can show that the right was clearly established by reference to a Supreme Court or Tenth Circuit opinion, or to the established weight of authority from other circuits. Id. "[T]he contours of the right must be sufficiently clear so that a reasonable official would understand that what he is doing violated that right." Id.

"A public employer may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Helget v. City of Hays, Kansas, 844 F.3d 1216, 1221 (10th Cir. 2017) (internal quotation marks and citations omitted). "Speech by citizens on matters of public concern lies at the heart of the First Amendment," and "public employees do not renounce their citizenship when they accept employment." Id. (quotation marks and citation omitted). "The Supreme Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." Id.

However, "a public employer must be able to control the operations of its workplace." Helget, 844 F.3d at 1221. "Thus, the First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (internal quotation marks, citations, and brackets omitted).

Analysis of whether the dismissal of a public employee violated the First Amendment is governed by the familiar Garcetti/Pickering[4] test. This test requires the court to consider the following five elements:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was made on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Helget, 844 F.3d at 1221.

Walters argues that Bointy's First Amendment retaliation claim fails as to the first element of the test – whether Bointy's speech was made pursuant to her official duties. "The determination of whether a public employee speaks pursuant to official duties is a matter of law." Hesse v. Town of Jackson, Wyo., 541 F.3d 1240, 1249 (10th Cir. 2008).

Garcetti holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. "The rationale for this rule is that 'restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" Casey v. West Las Vegas Independent School Dist., 473 F.3d 1323, 1328 (10th Cir. 2007) (quoting Garcetti, 547 U.S. at 421-22).

The Tenth Circuit's precedents take a "a broad view of the meaning of speech that is pursuant to an employee's official duties." Chavez-Rodriguez v. City of Santa

---

[4] Garcetti v. Ceballos, 547 U.S. 410 (2006); Pickering v. Board of Education, 391 U.S. 563 (1968).

Fe, 596 F.3d 708, 713 (10th Cir. 2010) (quotation marks and citation omitted). "The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Knopf, 884 F.3d at 945. "If the speech involves the type of activities that the employee was paid to do, then it falls within the scope of an employee's duties." *Id*. (quotation marks, citation and alteration omitted).

There are no "bright line rules" in determining whether an employee's speech was made pursuant to her official duties. "Many facts may be relevant—the tasks in an employee's job description, the frequency with which an employee performs a task, the subject matter of the employee's speech, the recipient of the employee's speech, the legal obligation for the employee to speak—but no one fact is determinative." Knopf, 884 F.3d at 945. The Tenth Circuit's precedents "take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Id*. at 946. Ultimately, the court asks "whether the employee was performing the task they were paid to perform when they spoke." *Id*. (quotation marks, citation and alterations omitted). If so, the speech was "commissioned" by her employer, and enjoys no First Amendment protection. *Id*. (quotation marks and citation omitted).

Upon review, the court finds that the facts alleged, and speech contents judicially noticed, plausibly satisfy the first element of the Garcetti/Pickering test. Before her comments, Bointy introduced herself by stating she was a former school counselor who served at three Edmond public schools. She also stated she had moved to the state department to serve "the student support team there." In addition, she stated she was the mother of four children who had been and were being served by Edmond public schools.[5]

---

[5] https://www.youtube.com/watch?v=SGQbhccvNNE.  Plaintiff's comments begin at approximately the 24:20 minute mark and conclude at approximately the 27:40 minute mark.

Bointy began her comments by stating that she felt compelled to speak about "something near and dear to [her] heart" --- child and adolescent mental health. Bointy stated that in 2021 the American Academy of Pediatrics had declared a national emergency on student mental health, provided a statistic indicating that emergency department visits for suspected suicide attempts among girls 12 to 17 years of age had risen 51% in comparison to those from 2019, and provided a list of consequences for a failure to address student mental health. She recognized that family was the first source of support for a child's mental health, but she stated that the increased stress and demand on "life today" made it imperative for schools to partner with families to help students thrive. As one of her suggestions for the school district, Bointy mentioned Project AWARE, and she stated that she had learned that afternoon that Edmond was going to apply for a Project AWARE grant. Bointy did not indicate from whom she acquired that information. She did state the grant could bring up to $9 million to Edmond public schools to support the needs of student mental health. She mentioned, however, that the grant was competitive and would not start until October 1. She stated that in the meantime, Edmond public schools could help by implementing an "universal screener" for mental health. She indicated that the "universal screener" had been conducted in the nine districts that were already Project AWARE grant recipients, and it was something that would not cost money. Before her time for speaking expired, Bointy described some of the questions asked of students by the screener and what the districts had done in response to affirmative answers given to those questions.

In her complaint, Bointy alleges that her job duties as School Counselor Specialist for Project AWARE East never involved publicizing programs or outreach to non-grant receiving districts. She alleges that she was assigned to facilitate grant work with three districts in eastern and southeastern Oklahoma. During her comments to the school board, Bointy did not indicate she would be involved in the

selection for the competitive Project AWARE grant for which Edmond would be applying.  Although she mentioned the suggestion of the use of a "universal screener" for mental health, there is no indication in her remarks that any of her job duties involved promoting a "universal screener" or that such activity was within the scope of her job duties.  Again, she alleges in her complaint that her job duties never involved publicizing programs.  Further, according to the Supreme Court, "the mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee—rather than citizen—speech."  Lane v. Franks, 573 U.S. 228, 240 (2014).

It is noteworthy that Bointy's speech was made to the Edmond Board of Public Schools after work hours.  The speech was made during the public comments section of the school board meeting where other citizens were allowed to address the Edmond school board members.  The Tenth Circuit has identified "[a]s examples of protected government speech" "communicating with newspapers or legislators or performing some similar activity afforded citizens."  Rohrbough v. University of Colorado Hosp. Authority, 596 F.3d 741, 746 (10th Cir. 2010) (ellipsis and internal quotation marks omitted).  In addition, Bointy alleges in her complaint that the contents of her speech were pulled from publicly-available resources such as the American Academy of Pediatrics, the American Academy of Child and Adolescent Psychiatry, and the Children's Hospital Association.

Although Bointy used the term "we" in her comments to the board, her speech, when viewed in a light favorable to Bointy, does not suggest that she was speaking in her capacity as an OSDE employee.  Viewing the contents of her speech and the allegations in her complaint in Bointy's favor, the court cannot conclude that the speech to the Edmond public school board members was within the scope of Bointy's official duties.  As a result, the court concludes that Bointy has satisfied the first element of the Garcetti/Pickering test.  Because Walters has not challenged

8

Bointy's ability to satisfy the other elements of the Garcetti/Pickering test, the court need not evaluate those elements and considers them satisfied. The court therefore concludes that Bointy has satisfied the first prong of the qualified immunity test by showing a violation of her First Amendment rights.

The question remaining is whether Bointy has satisfied the second prong of the qualified immunity test—whether the violated right was clearly established at the time of the defendant's complained-of conduct. The court concludes that she has. In the Tenth Circuit, "[i]t has long been established law [] that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action." Casey, 473 F.3d at 1333-1334; see also, Pryor v. School District No. 1, 99 F.4th 1243, 1251 (10th Cir. 2024) ("Under our Court precedent, plaintiffs speak personally as citizens, outside their official duties . . . when engaging in categories of activity for which they are not paid.") (citing Thomas v. City of Blanchard, 548 F.3d 1317, 1325 (10th Cir. 2008)) (other citation omitted). As a result, the court concludes that Walters is not entitled to qualified immunity with respect to Bointy's § 1983 First Amendment retaliation claim, and Walters' dismissal motion with respect to that claim will be denied.

IV.

A viable Burk tort claim requires:

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

Vasek v. Board of County Commissioners of Noble County, 186 P.3d 928, 932 (Okla. 2008).

Walters asserts that Bointy has failed to allege facts to establish that she was an at-will employee. Upon review, the court agrees. Although Bointy has submitted evidence to support her at-will status, *see*, doc. no. 10-1, the court declines to convert Walters' motion into one for summary judgment under Rule 56 to consider the evidence. *See*, Rule 12(d), Fed. R. Civ. P. ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and *not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56.") (emphasis added). The court will grant Walters' motion with respect to the Burk tort claim but will dismiss Bointy's claim without prejudice. At the status and scheduling conference in this case, the court will set a deadline for Bointy to file a motion seeking leave to amend her complaint. Prior to that deadline, Bointy may file a motion seeking leave to amend her complaint to state a viable Burk tort claim.

In the interest of justice (and as a matter of common sense), if it turns out that there is no factual dispute between the parties that Bointy was an at-will employee, the parties may stipulate to that fact in their joint status report, and Bointy may request the court at the status and scheduling conference to vacate the dismissal without prejudice of her Burk tort claim.[6]

V.

Based on the foregoing, Defendant Ryan Walters' (in his Individual Capacity) Motion to Dismiss Plaintiff's Petition (doc. no. 8) is **GRANTED in part** and **DENIED in part**.

---

[6] It appears to the court that the public-policy basis for the Burk tort claim is Article II, Section 22 of the Oklahoma Constitution, which provides that every person "may freely speak, write, or publish [her] sentiments on all subjects, being responsible for the abuse of that right." Okla. Const. Art. II, § 22. The Oklahoma Supreme Court has indicated the Oklahoma Constitution is more broadly worded and more protective of speech than the United States Constitution. *See*, In re Initiative Petition No. 366, 46 P.3d 123, 126 (Okla. 2002); Brock v. Thompson, 948 P.2d 279, 288 n. 33 (Okla. 1997).

The <u>Burk</u> tort claim alleged by plaintiff Janessa Bointy against defendant Ryan Walters, in his individual capacity, is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(6), Fed. R. Civ. P.  The motion is in all other respects **DENIED**.

DATED this 12th day of June, 2024.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

23-1002p003 rev_.docx