IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JANESSA BOINTY, )
    Plaintiff, )
)
vs. ) Cause No.: CIV-23-1002-F
)
STATE OF OKLAHOMA, ex rel., )
THE OKLAHOMA STATE )
DEPARTMENT OF EDUCATION, and )
RYAN WALTERS, in his official )
Capacity as the Superintendent of Public )
Instruction for the State of Oklahoma, )
    Defendants. )

**DEFENDANTS' STATE OF OKLAHOMA, ex rel.,
OKLAHOMA STATE DEPARTMENT OF EDUCATION,
and RYAN WALTERS, in his official capacity as
Superintendent of Public Instruction,
REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND REQUEST FOR EXTENSION OF TIME TO
PROVIDE SUPPLEMENTARY RESPONSES TO PLAINTIFF'S OPENING
DISCOVERY AND MEMORANDUM IN SUPPORT**

COME NOW DEFENDANTS, State of Oklahoma, ex rel., Oklahoma State Department of Education, and Ryan Walters, in his official capacity as Superintendent of Public Instruction, and reply to Plaintiff's Response in Opposition to Defendant's Motion for Protective Order and Request for Extension of Time, Dkt. 28. While replies are not necessary in all instances, Plaintiff's response has inserted two new issues for consideration by the court: (1) the appropriate method of collection of requested ESI and (2) the shifting of costs for collection and processing of ESI.

Unfortunately, before setting out to address these issues, it must be addressed that Plaintiff's counsel has made several material misrepresentations of fact regarding

statements made by Defendants' counsel in discovery discussions. Rather than consume the court's time the limited space available for this reply with denying each and every misstatement, Defendants' move that any of these unsubstantiated statements not specifically addressed in Defendants' reply be stricken as hearsay.

In addressing the two new issues set forth in Plaintiff's response and in working toward the development of a collaborative ESI Discovery Plan, as a framework, Defendants will apply the standards established by The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (October 2017). (EXHIBIT 1)

## (1) ESI COLLECTION AND PROCESSING

On Page 6 of Dkt. 28 Plaintiff's Response, in "A. – The Search for Electronically Stored Information," Plaintiff alleges that "Defendants have refused to provide any information as to why the ESI search requires retention of an outside firm . . ." This is simply not true. Specifically, the volume and breadth of records and the complexity of locating these records within a state agency's system were discussed as well as the fact that this is not a unique approach selected for this case, but rather a standard course of conduct, for which Deloitte is routinely engaged. Furthermore, an offer was extended to Plaintiff to collaborate in defining search terms and custodians for electronic records to work in conjunction with Plaintiff and Deloitte to develop a collaborative, cost-conscious search strategy. Additionally, in light of Plaintiff's objection to this collection method, an opportunity was extended for Plaintiff to submit an alternative proposal and cost estimate for consideration, which at the time of the filing of this reply has not been received.

Plaintiff asserts Defendants have proposed an inappropriate method of collection but provides no alternative method or cost estimate. As set forth in The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (October 2017), Principle 6: "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." (EXHIBIT 1)

As cited in The Sedona Conference, TAR Case Law Primer, Second Edition, 24 SEDONA CONF. J. 1 (2023), pages 19-20, with regard to a producing party's selection of method of technology for collection and processing,

> "Generally, as discussed further in Section III.C below, a responding party may not only determine how and whether to use TAR, it may do so without seeking court permission.[32] In Entrata, Inc. v. Yardi Systems, Inc., the court denied the plaintiff's motion to compel disclosure of the complete methodology and results of the defendant's TAR process in a situation where the parties failed to reach agreement on search methodology early on and where the plaintiff knew about the use of TAR but did not take issue with it until the last day of discovery.[33] The court noted that it was "'black letter law' that courts will permit a producing party to utilize TAR" and that the plaintiff "was not required to seek approval from the Magistrate Court to use TAR where there was never an agreement to utilize a different search methodology."[34] Citing Entrata, In re Broiler Chicken Grower Antitrust Litigation (No. II), similarly held, "Courts in this district have found that when there has not been an agreement to the contrary, a party is not required to seek approval to use TAR."[35]" (Citations omitted.) (EXHIBIT 2)

Defendants have made and continue to make a good faith effort to cooperate in providing the most efficient and cost-effective method for the collection and processing of ESI in this matter but cannot in good conscience provide what amounts to a blank check to Plaintiff to cover the expense of the expansive, untailored review of potentially hundreds of thousands of documents with a search methodology yet to be defined by Plaintiff.

## (2) COST SHIFTING FOR ESI REVIEW

Defendants have already produced Plaintiff's discipline file, personnel file, pay records, any applicable insurance policy, communications regarding Plaintiff's poor work performance and termination, employee handbooks, and media confidentiality policies signed by Plaintiff.

Plaintiff's overbroad, scattershot ESI approach could potentially result in discovery requiring the collection and review of hundreds of thousands of documents and costing nearly as much as or more than even the Plaintiff's estimated damages in this case, a fact not to be overlooked. In the present case, the Plaintiff peculiarly brings an action alleging wrongful termination in violation of her free speech rights for identifying herself as an OSDE employee and speaking about Project AWARE, when her assigned duties specifically included public speaking about Project AWARE and her engagement with community stakeholders was part of her regular performance reviews. (EXHIBIT 3, page 2; EXHIBIT 4, page 1) Additionally, Plaintiff's discipline file is extensive, documenting that she did not work expected hours and did not respond promptly to communications from her supervisors and team members during anticipated work hours. In fact, Ms. Bointy's performance review indicated that she should "Improve on communications with team members and collaborate amongst like disciplines . . ." (EXHIBIT 5, page 4) Failure to communicate with team members and like disciplines during a time of crisis following a student death prior to making public address while serving in the role of school counselor specialist is a specific and distinguishable set of fact circumstances that not only made management of OSDE's efforts difficult but also makes the identification of similarly

4

situated individuals anticipated by Plaintiff's broad discovery requests not reasonably anticipable.

> As set forth in Helget v. City of Hays, Kansas, 844 F.3d 1216, 1221 (10th Cir. 2017) and cited in this court's previous Order, Dkt. 19, "a public employer must be able to control the operations of its workplace." Thus, the First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (internal quotation marks, citations, and brackets omitted)."

The specific relevant fact scenario presented in this case is unusual, as evidenced by the statements of Ms. Bointy's supervisor, Cheryl McGee, in her communication of March 7, 2023. (EXHIBIT 6) This makes the existence of similarly situated individuals highly unlikely. McGee's communication, the job description, and the two performance reviews referenced in this reply were all provided as part of Defendant's Initial Disclosures in this case on July 8, 2024, meaning Plaintiff had notice of the distinct facts in interest prior to Defendants' Motion for Protective Order, Dkt. 26, and Plaintiff's Response Dkt. 28.

All of the discipline file exhibits referenced herein contained information known to Plaintiff and were additionally provided as part of Defendants' Initial Disclosures in this case on July 8, 2024.

In such a case, courts may depart from the general rule and allocate costs among the parties. As discussed in The Sedona Conference, TAR Case Law Primer, Second Edition, 24 SEDONA CONF. J. 1 (2023), pages 71-72,

> "In some cases, courts have departed from the general rule and have instead allocated costs of responding among the parties. In Lawson v. Spirit

5

AeroSystems, the court granted the defendant's motion to shift the TAR-related costs and allocated the costs 80 percent to the plaintiff and 20 percent to the defendant because the plaintiff had "wanted to proceed with the TAR process at a point in time when it was disproportional to the needs of the case."[261] The parties had engaged in protracted negotiations and motion practice related to discovery, initially involving disputes relating to search terms and the proposed custodians. The plaintiff then insisted that the defendant switch to a TAR methodology and the defendant agreed, subject to filing a motion to shift costs if the effort was considered disproportionate. Throughout the TAR process, the defendant acceded to the plaintiff's continued demands until it took the position, and the court agreed that it was finished. As discussed above, the court declined to force the defendant to continue its review when its estimated recall met or exceeded even that initially demanded by the plaintiff.[262] The court found it was appropriate to shift costs of the TAR review to the plaintiff because "Lawson's continued pursuit of the ESI dataset via TAR was not proportional to the needs of the case," and he had pursued "needlessly overbroad discovery."[263] Because Lawson had "wanted to proceed with the TAR process at a point in time when it was disproportional to the needs of the case," the court held that he should bear much of the cost, to protect the defendant.[264]" (Citations omitted.) (EXHIBIT 2)

Based on the specific, distinguishable facts of the instant case, such cost shifting is appropriate given the breadth and volume of Plaintiff's requests.

**RESPECTFULLY SUBMITTED THIS 12th DAY OF AUGUST, 2024.**

*/s/ Shannon D. Smith*
Shannon D. Smith OBA #17346
Deputy General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd.
Oklahoma City, OK 73105
Telephone: 405.764.5314
Shannon.Smith@sde.ok.gov
Attorney for Defendants Oklahoma State Department of Education and Ryan Walters, in his official capacity as Superintendent of Public Instruction

CERTIFICATE OF SERVICE

A true copy of the foregoing was served on opposing counsel below-listed via U.S. Mail, postage pre-paid, and e-mail on this 12th day of August, 2024.

Leah M. Roper OBA #32107
THE CENTER FOR EMPLOYMENT LAW
1133 N. Portland Ave.
Oklahoma City, OK 73107
Telephone: 405.252.1180
Leah@CenterForEmploymentLaw.com
ATTORNEY FOR PLAINTIFF

Timothy Davis
Alexandra Marie Williams
Jackson Walker, LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
(817) 334-7270
tdavis@jw.com
amwilliams@jw.com
Attorney for Defendant Ryan Walters, individually

Shannon D. Smith OBA #17346
Deputy General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd.
Oklahoma City, OK 73105
Telephone: 405.764.5314
Shannon.Smith@sde.ok.gov
Attorney for Defendants Oklahoma State
Department of Education and Ryan
Walters, in his official capacity as
Superintendent of Public Instruction