IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANESSA BOINTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-1002-SLP |
| ) | |
| STATE OF OKLAHOMA, ex rel, ) | |
| OKLAHOMA STATE DEPARTMENT ) | |
| OF EDUCATION, and RYAN WALTERS, ) | |
| in his Official Capacity as Superintendent ) | |
| of Public Instruction, and in his Individual ) | |
| Capacity, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is the Motion for Summary Judgment, with Brief in Support, of Defendant Ryan Walters in his Individual Capacity [Doc. No. 78]. Plaintiff has filed a Response in Opposition [Doc. No. 110] and Defendant has filed a Reply [Doc. No. 113].[1] The matter is fully briefed and ready for determination. For the reasons that follow, Defendant Walters' Motion is GRANTED.

**I.   Background**

Plaintiff, Janessa Bointy (Ms. Bointy), is a former employee of the Oklahoma State Department of Education (OSDE). On March 9, 2023, Ms. Bointy's employment was terminated. Ms. Bointy alleges that she was fired by the OSDE in retaliation for exercising

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

her First Amendment rights a few days prior, on March 6, 2023, when she spoke at a school board meeting for Edmond Public Schools.

Defendant Ryan Walters (Defendant Walters) is the Superintendent of Public Instruction for the State of Oklahoma (Superintendent). He held that position at the time of Ms. Bointy's termination. In this Order, all references to Defendant Walters are made as to claims against him in his individual capacity.

Ms. Bointy originated this action in the District Court of Oklahoma County, State of Oklahoma. *See* Pet. [Doc. No. 1-2]. Defendants then removed the action to federal court on the basis of federal question subject matter jurisdiction. *See* Notice of Removal [Doc. No. 1]. In the course of the parties' summary judgment briefing, Ms. Bointy clarifies that the sole claim she brings against Defendant Walters is in his individual capacity pursuant to 42 U.S.C. § 1983 for an alleged violation of her free speech rights under the First Amendment to the United States Constitution. *See* Pl's. Resp. in Opp. To Official Defs.' Mot. for Summ. J. [Doc. No. 107] at 6-7.

Defendant Walters moves for summary judgment raising the defense of qualified immunity. He relies on both prongs of the qualified immunity analysis and asserts that: (1) Ms. Bointy cannot establish that Defendant Walters violated her constitutional rights; and (2) Ms. Bointy cannot show that his conduct violated clearly established federal law.

Central to the parties' dispute is whether Defendant Walters can be held liable for the decision to terminate Ms. Bointy. Although Ms. Bointy agrees that Defendant Walters did not participate in any manner in her termination, Ms. Bointy claims that, as Superintendent, Defendant Walters is responsible for the policies that were used as the

basis to terminate her employment. The Court finds Ms. Bointy has failed to establish any basis upon which to hold Defendant Walters responsible for the termination of her employment and, accordingly, that Defendant Walters is entitled to qualified immunity.

## II. The Law of the Case Doctrine Does not Preclude Defendant Walters from Asserting Qualified Immunity at the Summary Judgment Stage

Before proceeding to the qualified immunity analysis, the Court addresses Ms. Bointy's preliminary argument that the law of the case doctrine precludes Defendant Walters from raising qualified immunity at the summary judgment stage of proceedings. *See* Pl.'s Resp. at 18-19. This case was previously assigned to a different district judge who addressed qualified immunity in the context of a motion to dismiss filed by Defendant Walters in his individual capacity. The issue as then raised required the Court to determine whether Ms. Bointy's speech was protected by the First Amendment and specifically, whether her speech was made pursuant to her official duties as an OSDE employee. The Court addressed both prongs of the qualified immunity analysis and found dismissal on grounds of qualified immunity was not proper. *See* Order [Doc. No. 19].

The issue currently pending before the Court is not whether Ms. Bointy's speech was protected by the First Amendment, but whether Defendant Walters is subject to supervisory liability for any alleged violation of Ms. Bointy's First Amendment rights.[2] Because this issue is distinct from the issue previously addressed by the Court, Ms.

---

[2] Although the question of supervisory liability is a component of liability under § 1983 it is also "incorporate[d] into [the court's] qualified immunity analysis, where [the court] ask[s] whether a clearly established constitutional right has been violated." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).

3

Bointy's reliance on the law of the case doctrine is misplaced. More fundamentally, the Court's prior ruling was an interlocutory ruling, to which the law of the case doctrine does not apply. *See, e.g., Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011) (In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another."); *see also In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1211 (10th Cir. 2023) ("[T]he law of the case doctrine is fundamentally permissive[.]").[3] Accordingly, the Court addresses the issue of qualified immunity as now raised by Defendant Walters.

### III. Defendant Walters is Entitled to Qualified Immunity as Ms. Bointy Has Not Shown His Supervisory Liability

#### A. Governing Standard

The doctrine of qualified immunity "protects public employees from both liability and from the burdens of litigation arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotation marks and citation omitted). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks and citation omitted). "When a defendant raises a qualified immunity defense on summary judgment, the onus is on the plaintiff to demonstrate (1) that the

---

[3] The law of the case doctrine does not bar review of issues of qualified immunity even where such issues are immediately appealable. *See Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012) (finding "no force" to appellant's argument that previously assigned district judge's denial of qualified immunity was binding on subsequently assigned judge as law of the case because it was a final appealable order from which the appellee did not immediately appeal).

official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1217 (10th Cir. 2024) (emphasis in original; internal quotations marks and citations omitted).  The court accepts the plaintiff's version of the facts, but those facts must find support in the record.  *Id*.

### B.   Undisputed Material Facts[4]

Ms. Bointy was formerly employed by the OSDE as a School Counselor Specialist for Project AWARE East.  She was employed in that capacity from approximately December 28, 2020 until March 9, 2023.

Defendant Walters has served as Superintendent since approximately January 2023.  Ms. Bointy has never communicated with or even met Defendant Walters.

On March 6, 2023, Ms. Bointy attended a school board meeting for Edmond Public Schools.[5]  During the public comments section of the meeting, Ms. Bointy spoke for approximately two minutes on child and adolescent mental health, including the importance of providing mental health resources to students, the availability of such resources, and ideas for implementation.[6]

---

[4] Included here are those material facts supported by the record and not genuinely disputed in the manner required by Fed. R. Civ. P. 56(c).  To the extent either party has made unsubstantiated allegations, general and conclusory statements, or require "one inference too many to adequately support the assertion" made, such matters have not been included.  *See generally Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1087, 1100 n. 21 (10th Cir. 2025).

[5] Ms. Bointy has four children enrolled in the Edmond, Oklahoma public schools system.

[6] Ms. Bointy has provided a link to a news story that includes the airing of her speech.  *See* Resp. at 14, n.2, PF 25.

Late that same evening, Ms. Bointy's direct supervisor, Cheryl McGee, sent an email to the Chief Human Resources Officer for OSDE, Susan Miller, advising that she had concerns regarding Ms. Bointy's statements at the school board meeting and requesting a meeting. Ms. McGee further advised that she had "repeated documented issues with this employee throughout [her] tenure with OSDE." *See* email [Doc. No. 78-3].

On March 9, 2023, after consultation with Ms. Bointy's supervisor and the approval of OSDE legal counsel, HR made the decision to terminate Ms. Bointy's employment. Defendant Walters was not involved in the termination of Ms. Bointy and had no knowledge of the termination prior to its occurrence.

During her employment with OSDE, Ms. Bointy was subject to a Confidentiality Agreement and a Media Policy. The Confidentiality Agreement states in relevant part:

> During their employment at the Oklahoma State Department of Education (OSDE), employees may have access to confidential, secret or proprietary information. Any confidential information, whether oral, written or electronic, should be maintained in a manner that ensures its confidentiality. Employees should maintain such information in confidence and use such information only in the interest of OSDE. Employees may use or disclose information learned or acquired through their employment only for the performance of their job and as otherwise permitted by law. Confidential agency information is just for agency use and is not intended for distribution outside the agency. Distribution of such information requires both a need to know and a right to know the information requested.

*See* Confidentiality Agreement [Doc. No. 78-5] at 1. Ms. Bointy acknowledges that the Confidentiality Agreement was not intended to deprive OSDE employees of their right to free speech and she has no criticisms of the Confidentiality Agreement itself. Indeed, she agrees that the OSDE had legitimate reasons for requiring the Confidentiality Agreement,

6

to include the protection of student data and school district data. But Ms. Bointy contends the Confidentiality Agreement was erroneously applied to her.

The Media Policy, included as part of the Employment Handbook, provides:

> It is the policy of OSDE to respond to news media inquiries in a timely manner. All media inquiries, whether verbal or written, are to be directed to the Communications Division or Cabinet head. Any media contact not made initially through the Communications Division should be quickly reported to Communications Division.
>
> As the Communications Division is responsible for officially responding to all media inquiries, it is not appropriate for any other OSDE employee to contact or respond to the media on behalf of the agency. Any unauthorized individual who makes public comments or addresses the media as an apparent representative of the OSDE may be subject to discipline, up to and including termination.

*See* Media Policy [Doc. No. 78-6] at 8.

Ms. Bointy has no criticisms of the Media Policy itself and she does not contend that the Media Policy was intended to deprive OSDE employees of their First Amendment rights. Ms. Bointy agrees that the OSDE had legitimate reasons to adopt the Media Policy. However, as with the Confidentiality Agreement, Ms. Bointy contends the Media Policy was erroneously applied to her.

Defendant Walters did not create the Confidentiality Agreement or the Media Policy. The Agreement and Policy were existing at the time he became Superintendent and something he "inherited" when he took office.

**C.     Analysis**

Defendant Walters argues, under the first prong of the qualified immunity analysis, that he did not cause a violation of Ms. Bointy's constitutional rights. He moves for

7

summary judgment on grounds that: (1) he did not participate in the termination decision; (2) he cannot be held individually liable for the conduct of his subordinates under theories of respondeat superior or vicarious liability; and (3) he is not liable in his supervisory capacity as a policymaker.

Ms. Bointy purports to "dispute" the first ground but acknowledges as "correct" Defendant's statement that "Ms. Bointy can point to no evidence that Mr. Walters, himself, made the decision to terminate her employment." Resp. at 27. Ms. Bointy argues that it is nonetheless appropriate to submit the matter for determination by a jury because Defendant Walters impermissibly relies on "self-serving testimony of interested parties" that the Court must disregard. *Id*. at 27-28. Notably, she does not identify the self-serving testimony. And as authority in support of her argument, Ms. Bointy cites *Sonnenthiel v. Christian Moerlein Brewing Co*., 172 U.S. 401 (1899). But this extremely old precedent is contrary to current law.[7] As the Tenth Circuit has very recently made abundantly clear, at the summary judgment stage "a district court may consider interested witness evidence from the movant . . . so long as a jury would be required to believe such evidence because it is uncontradicted and unimpeached." *Mauldin v. Driscoll*, 136 F.4th 984, 995 (10th Cir. 2025). Ms. Bointy fails to show that the evidence relied upon by Defendant Walters is

---

[7] Judges in this judicial district have so noted for over twenty years now. *See Cox v. Council for Developmental Disabilities, Inc*., No. CIV-12-0183-HE, 2013 WL 647390 at *1, n. 2 (W.D. Okla. Feb. 21, 2013) ("Plaintiff's brief repeatedly relies on *Sonnentheil*" for the proposition that self-serving testimony must be disregarded for summary judgment purposes but "[w]hatever may have been the standard for summary judgment in the 19th Century . . . is plainly *not* the standard now." (emphasis in original)).

contradicted or subject to impeachment. Indeed, as noted, she does not even identify the "self-serving testimony."[8]

As discussed below, the second ground upon which Defendant Walters moves for summary judgment is a well-established principle under § 1983. Defendant Walters does not argue any facts in support, but simply sets forth this settled principle. And Ms. Bointy acknowledges this settled principle. Therefore, the Court's focus is on the third ground which is central to the parties' dispute – whether Defendant Walters can be held liable in his supervisory capacity as a policy maker for OSDE.

Both parties recognize and rely upon *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), as setting forth the applicable law governing supervisory liability under § 1983.[9] As the Tenth Circuit explained in *Dodds*, a supervisor may not be held liable under § 1983 under a theory of respondeat superior, i.e., without fault on his part. *Id*. at 1195. Instead, a supervisor is liable only when he himself has "breached a duty to plaintiff which was the proximate cause of the injury." *Id*. (internal quotation marks and citation omitted). It is insufficient to show merely that a "defendant was in charge of other state actors who actually committed the violation. Instead . . . the plaintiff must establish a deliberate,

---

[8] Although *Mauldin* is a very recent Tenth Circuit decision, it was decided *prior to* the filing of Ms. Bointy's Response and, therefore, should have been addressed by her.

[9] In *Dodds*, the Tenth Circuit discussed the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) – which addressed supervisory liability under *Bivens* – and the effect of that decision on supervisory liability under § 1983. *See Bivens v. Six Unknown Fed. Bureau of Narcotics Agents*, 403 U.S. 388 (1971). The Tenth Circuit acknowledged there were "important questions about the continuing vitality of supervisory liability" after *Iqbal*, but concluded that § 1983 liability survived against a "defendant-supervisor" under the parameters set forth in its decision. *Dodds*, 614 F.3d at 1194, 1199.

9

intentional act by the supervisor to violate constitutional rights." *Id*. (internal quotation marks and citations omitted).

But "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or h[is] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Id*. at 1199 (cleaned up). Thus, an official with policy-making authority who "creates, actively endorses, or implements a policy which is constitutionally infirm . . . may face personal liability for the violations which result from the policy's application." *Id*. (internal quotation marks and citation omitted). To establish liability, a plaintiff must demonstrate "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." *Id*.

In a concurring opinion in *Dodds*, United States Tenth Circuit Judge Tymkovich observed:

> In sum, our precedent has established, with varying levels of clarity, that a supervisor is only liable for violations that he caused, and that causation requires at least some degree of fault on the supervisor's part. Exactly how this causation can be shown varies depending on the type of violation and the facts of the case. . . . First, a supervisor may directly order a subordinate to violate the plaintiff's rights. . . . Next, some cases say a supervisor may cause violations when he or she has actual knowledge of past constitutional violations being carried out by a subordinate, and does nothing to stop future occurrences. . . . Finally, a series of cases requires a standard of deliberate indifference. Those types of cases include the failure to train, the failure to supervise, and potentially other supervisory shortcomings. . . . In those cases,

> we may find that a supervisor has somehow caused the violation to occur by an egregious failure to act. . . . In sum, our decisions hold that supervisors are liable for constitutional violations they cause. The exact contours of causation – especially regarding an official's state of mind sufficient for liability – are uncertain in light of *Iqbal*. But for purposes of this case, Dodds alleges the sheriff deliberately implemented an unconstitutional bail policy that violated his clearly established rights as a pretrial detainee and thereby caused him injury. As the majority ably demonstrates, his allegations are enough to survive summary judgment.

*Dodds*, 614 F.3d at 1211-13 (Tymkovich, J., concurring).

Here, Ms. Bointy argues that Defendant Walter's "exercise of control, statutory authority, and continued implementation and utilization of the policy which led to Ms. Bointy's termination is more than sufficient to meet the involvement requirement." Resp. at 28. Ms. Bointy does not identify whether she is referring to the Confidentiality Agreement or the Media Policy in making this argument, nor does she cite the factual record. Because no other policy is identified by either party, the Court's analysis is confined to the Confidentiality Agreement and Media Policy.[10]

### 1. Defendant Walters Possessed Responsibility for the Continued Operation of the Policies

Ms. Bointy argues that Defendant Walters is the final policymaker at the OSDE. *See* Pl.'s Resp. at 28 ("[B]y Oklahoma statute, Defendant Walters has ultimate authority and exclusive control over the policies and procedures of the Oklahoma State Department of Education, as well as control over the OSDE's personnel."). In support, Ms. Bointy cites Okla. Stat. tit. 70, § 3-107.1. The statute provides in relevant part that "[t]he State

---

[10] Ms. Bointy testified that the Confidentiality Agreement and Media Policy were the only policies or customs of the OSDE that she blamed for her termination. *See* Bointy Dep. [Doc. No. 78-2] at 140.

Superintendent of Public Instruction shall have the control of and direct the State Department of Education" and "shall [a]dopt policies and make rules for the organization, operation and administration of the State Department of Education." *Id.*, § 3-107.1(2). The statute further provides that the State Superintendent of Public Instruction "shall . . . [h]ave general supervision of all employees of the Department." *Id.*, § 3-107.1(4).

In reply, Defendant Walters wholly fails to address § 3-107.1. Instead, he argues that the Confidentiality Agreement and Media Policy were in place prior to him becoming Superintendent. The Court finds this fact is without consequence. Pursuant to § 3-107.1, Defendant Walters, as Superintendent, is responsible for the Confidentiality Agreement and Media Policy. In any event, the fact that he held responsibility for their continued operation does not, without more, establish his liability. As discussed below, Ms. Bointy's claim fails on the causation and state of mind requirements.[11]

### 2. Neither the Confidentiality Agreement nor the Media Policy Caused the Complained of Constitutional Harm

Ms. Bointy's claim fails on the causation element. To succeed on this element, Ms. Bointy must show that Defendant Walters' "alleged actions caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."

---

[11] As Defendant Walters points out, however, he had only been Superintendent for approximately two months prior to Ms. Bointy's termination and would have had "a very short time to learn about the [P]olicies and any alleged issues with them." Mot. at 24. The Court finds, in the context of this case, that this fact speaks to the causation and/or state-of-mind requirements of supervisory liability and further supports the finding, discussed infra, that the record is void of evidence that Defendant Walters is subject to supervisory liability.

12

*Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (internal quotation marks and citation omitted).

Here, Ms. Bointy's claim is that HR erroneously applied the Confidentiality Agreement and/or the Media Policy to her and this erroneous application led to the alleged violation of her constitutional rights. The policies themselves do not serve as the basis for her claim. Necessarily therefore, any implementation of the policies per se does not give rise to the imposition of liability on Defendant Walters. *Cf. Goudeau v. E. Baton Rouge Par. Sch. Bd.*, 540 F. App'x 429, 437 (5th Cir. 2013) (rejecting plaintiff's argument that school superintendent could be held liable based on constructive or actual knowledge of a grade-changing policy where "the potential constitutional violation alleged by [the plaintiff] [was] not the implementation of the grading policy per se, but the infringement on her First Amendment rights in the form of employment retaliation for the exercise of those rights").

By contrast, in *Dodd*, supervisory liability was imposed upon a county sheriff because he acquiesced in a policy that prevented arrestees from posting preset bail. The policy itself prevented arrestees from posting preset bail and it was the inability to post such bail that resulted in the deprivation of Fourteenth Amendment due process rights. The defendant sheriff acquiesced in these policies in deliberate indifference to the constitutional rights of the arrestees and therefore, could be subject to supervisory liability. *Dodd*, 614 F.3d at 1204 (finding facts, taken in the light most favorable to the plaintiff showed that the sheriff "played more than a passive role in the alleged constitutional violation – he may have deliberately enforced or actively maintained the policies in question at the jail" and

13

by the sheriff's own admission, "the policies' enforcement caused the constitutional violation").

Here, the record is devoid of any evidence that the Confidentiality Agreement or the Media Policy caused the constitutional violation. Notably, Ms. Bointy does not bring any claim challenging the constitutionality of these policies. Instead, as she testified, her claim is based on the erroneous application of the policies to her.

### 3. Defendant Walters Did Not Act with the Requisite State of Mind

Finally, there is no evidence that Defendant Walters acted with any culpable state of mind.[12] As the Court has addressed, the undisputed factual record establishes that Defendant Walters had no knowledge of Ms. Bointy's termination until this lawsuit was filed. And Ms. Bointy has not shown, nor has she even alleged in her Petition or any other filings, that either the Confidentiality Agreement or the Media Policy itself violates federal law such that the mere existence of these policies would suffice to establish culpability. *See Dodds*, 614 F.3d at 1199 n. 8 (addressing circumstances were the unconstitutional nature of the policy itself is sufficient to establish the requisite culpability). In fact, Ms. Bointy testified that she has no reason to believe that Defendant Walters intended to violate her right to free speech. *See* Bointy Dep. [Doc. No. 78-2] at 113.

---

[12] In *Dodds*, the Tenth Circuit held a defendant-supervisor must have "acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*, 614 F.3d at 1199. Defendant Walters argues that "[t]he required retaliatory intent in a free speech retaliation case is a parallel to the "discriminatory purpose" required in an invidious discrimination case." Mot. at 22. The Court need not decide the state-of-mind required to support the constitutional violation at issue. Here, there is no evidence of *any* degree of Defendant Walters having acted with a culpable state of mind with respect to Ms. Bointy's alleged retaliatory termination.

Additionally, there is no evidence in the record to establish a custom or practice of applying the Confidentiality Agreement or Media Policy in a manner that resulted in violations of First Amendment rights of OSDE employees. As the Tenth Circuit has explained, "[t]he custom or practice giving rise to liability must be so well settled and widespread that policymaking officials . . . can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Burke*, 935 F.3d at 998 (internal quotation marks and citation omitted) (recognizing that the elements of supervisory and municipal liability are the same where liability is predicated on maintaining a policy or custom that resulted in the underlying violation).

In *Burke*, the Tenth Circuit found a reasonable jury could find the sheriff acted with the requisite state of mind based on deficiencies at the county jail in medical care that had been unaddressed for several years. *Id*. (noting that "[b]etween 2007 and Mr. Williams's death in 2011, outside auditors and consultants informed Sheriff Glanz, the official responsible for the jail's medical care, of understaffing, inadequate training, or poor follow-up" and that "Sheriff Glanz repeatedly told auditors he planned to improve the quality of the jail's medical care, but . . . could not point to any changes that were made"). By contrast, here, Defendant Walters had been Superintendent for a very few months before Ms. Bointy's termination and there is no evidence that he had any knowledge that the Confidentiality Agreement or Media Policy were causing the denial of First Amendment rights.

Ms. Bointy includes a termination letter dated May 25, 2023 addressed to Cheryl McGee and stating as the basis for termination "a breach of confidentiality by leaking

15

Case 5:23-cv-01002-SLP   Document 118   Filed 06/23/25   Page 16 of 17

internal agency emails to the media." *See* McGee Termination Letter [Doc. No. 110-1]. Even if the Court were to assume that this termination implicated Ms. McGee's First Amendment rights, her termination post-dates Ms. Bointy's termination. Moreover, regardless of its timing, Ms. Bointy cites no other evidence of any terminations alleged to be in violation of any OSDE employees' First Amendment rights. Such a singular incidence is insufficient to demonstrate any well-settled and widespread custom.

Nor is there any evidence of any obvious risk that the Confidentiality Agreement or Media Policy would result in a violation of Ms. Bointy's First Amendment rights. Again, Ms. Bointy's own testimony was that she did not think there was anything about either the Confidentiality Agreement or the Media Policy that was designed or intended to deprive OSDE employees of their right to free speech. *See* Bointy Dep. [Doc. No. 78-2] at 129, 136.

In sum, the Court finds the factual record does not support imposition of supervisory liability on Defendant Walters as to Ms. Bointy's § 1983 claim. There is no evidence that Defendant Walters: (1) "directly order[ed] a subordinate to violate [Ms. Bointy's] rights"; (2) "ha[d] actual knowledge of past constitutional violations being carried out by a subordinate, and d[id] nothing to stop future occurrences"; or (3) that "other supervisory shortcomings" by Defendant Walters "somehow caused the violation to occur by an egregious failure to act". *Dodds*, 614 F.3d at 1211-13 (Tymkovich, J., concurring). As discussed, there is no evidence to support a finding that Defendant Walters caused the constitutional violation or acted with any requisite mental state. Accordingly, Defendant

16

Walters is entitled to qualified immunity as Ms. Bointy has not demonstrated the violation of her First Amendment rights by Defendant Walters.[13]

## IV.     Conclusion

IT IS THEREFORE ORDERED that the Motion for Summary Judgment, with Brief in Support, of Defendant Ryan Walters in his Individual Capacity [Doc. No. 78] is GRANTED.  Defendant Walters is entitled to qualified immunity as Plaintiff has failed to establish that he violated her constitutional rights.

IT IS SO ORDERED this 23rd day of June, 2025.

*[signature]*

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[13] Because the Court finds Defendant Walters is entitled to qualified immunity under the first prong, the Court need not further decide Defendant Walters' additional argument under the second prong of the qualified immunity analysis – whether the scope of supervisory liability, in the context of the facts and circumstances of this case, was clearly established at the time of the alleged constitutional violation. *See Valdez v. Macdonald*, 66 F.4th 796, 831 (10th Cir. 2023) ("A "defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong."); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (the court has discretion regarding "which of the two prongs of the qualified immunity analysis should be addressed first").